IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Shakara Murphy,<br>    Plaintiff,<br><br>vs.<br><br>Benjamin Fields; Leon Lott, *in his official capacity as the Sheriff of Richland County*; Richland County Sheriff's Department; Richland County,<br><br>    Defendants. | Civil Action No. 3:17-cv-2914-CMC<br><br>**OPINION AND ORDER** |

This matter is before the court on motions for summary judgment by Defendant Benjamin Fields ("Fields") (ECF No. 42) and Defendants Leon Lott, the Richland County Sheriff's Department[1], and Richland County[2] (ECF No. 45). Plaintiff filed responses in opposition to the motions (ECF Nos. 53, 54) and Defendant Fields filed a reply (ECF No. 55). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2), D.S.C., this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings and a Report and Recommendation ("Report") on dispositive issues. On August 29, 2019, the Magistrate Judge issued a Report recommending the motions be granted in part as to abandoned claims, but denied

---

[1] Sheriff Lott and the Richland County Sheriff's Department ("the RCSD") are named as Defendants in Plaintiff's claims brought pursuant to the South Carolina Tort Claims Act ("SCTCA"), S.C. Code § 15-78-70. The Report of the Magistrate Judge referred to these Defendants collectively as "Sheriff." Because Sheriff Lott is not a proper Defendant under the SCTCA, he is dismissed as a Defendant. *Robinson v. Metts*, 86 F. Supp. 2d 557, 564 (D.S.C. 1997). The proper Defendant as to Plaintiff's SCTCA claims is the RCSD.

[2] As noted by the Magistrate Judge, Richland County and the RCSD are two separate entities. ECF No. 59 at 1 n.1. Plaintiff makes no allegations against Richland County or any of its employees. Therefore, Richland County is also dismissed as a Defendant in this action.

as to the excessive force claim against Fields, and the negligence and gross negligence claims against the RCSD. ECF No. 59. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Defendants filed joint objections to the Report. ECF No. 60. Plaintiff filed a response in opposition to Defendants' objections. ECF No. 61.

## FACTS[3]

This case arises out of an incident at Spring Valley High School, in which a resource officer, Deputy Fields, was called to assist a teacher with an uncooperative student, Plaintiff Shakara Murphy. This incident occurred in teacher Robert Long's third period algebra class on October 26, 2015. ECF No. 42-4 at 51 (SLED Report). Long had noticed Plaintiff holding an electronic device prior to the start of class and asked her to put it away. ECF No. 42-2 at 12 (Long dep. at 19-20). Plaintiff placed the device in her book bag under her desk. *Id.* Long then instructed the students to open their laptops to complete an assignment. *Id.* at 15. Plaintiff asked to see her resource teacher, Ms. Bryant, for assistance with the assignment, pursuant to her individualized education program ("IEP") for special needs. *Id.* at 10; ECF No. 42-5 at 16 (Plaintiff dep. at 58-59). Although Plaintiff's IEP stated teachers were required to allow Plaintiff to call for assistance from her resource teacher when she felt overwhelmed, Long denied this request.[4] ECF No. 42-5

---

[3] The facts are presented in the light most favorable to Plaintiff. *See* Standard, *infra*.

[4] This fact is disputed: Long testified Plaintiff never asked to see her resource teacher. ECF No. 42-2 at 20.

2

at 59. Plaintiff then attempted to contact her resource teacher by email on her laptop, but Long closed the program from his own computer.[5] *Id.* at 59; ECF No. 42-2 at 16-19.

After attempting approximately five questions without the aid of her resource teacher, Plaintiff stopped working on the assignment because she did not understand it. ECF No. 42-5 at 59. She testified she put her head down on her desk and started "fiddling with her fingernails" under her desk. *Id.* Long, however, believed she was using her electronic device[6] under her desk, and told her to put it away. *Id.* at 17-18. Plaintiff replied she did not have anything in her hand, but Long believed he saw a phone in her hand under the desk, told her to put it away, and threatened to write a disciplinary referral – despite Plaintiff's continued insistence she had nothing in her hand. *Id.* at 18. Plaintiff testified Long then began writing a referral and told her to leave the classroom, but called an administrator, KaRon Webb, to escort her.[7] *Id.*

Webb came into the classroom and asked Plaintiff to leave with him, but Plaintiff protested because she believed she had not done anything wrong. ECF No. 42-3 at 8, 23-25 (Webb dep. at 13, 35-37). Despite Webb asking several times for her to leave the classroom, Plaintiff did not

---

[5] Teachers' computers are equipped with a program allowing them to monitor students' internet activity and close any programs unrelated to the lesson at hand. ECF No. 42-2 at 17.

[6] At the time of the incident, Long apparently believed the item was a cell phone; Plaintiff testified it was an iPod. This difference is immaterial to the case.

[7] Long's version of the facts is different: he testified Plaintiff had a phone in her hand under her desk, and told him to "get out of my face" in response to his asking her to put it away. He testified he asked Plaintiff repeatedly to give him the phone, and she put it in her backpack and refused. Finally, he stated Plaintiff refused to take the disciplinary referral and walk to in-school suspension herself, so he called Mr. Webb to escort her. ECF No. 42-2 at 23-29.

3

move from her desk. *Id.* Therefore, Webb called the school resource officer, Richland County Sheriff's Deputy Benjamin Fields, to assist in the classroom. *Id.* at 26. Webb and Fields discussed the situation outside the classroom before entering, and unsuccessfully attempted to contact a teacher or administrator familiar with Plaintiff to assist in defusing the situation. *Id.* at 27. Fields then decided to enter the classroom and remove Plaintiff. ECF No. 42-2 at 10 (Fields dep. at 11).

When Fields entered the classroom, he engaged Plaintiff in conversation and asked why she would not leave her seat. *Id.* Plaintiff claimed she did nothing wrong, but Fields responded she was disrupting the class, had been asked several times to leave, and was being disrespectful. ECF No. 42-5 at 19-20. Fields asked her multiple times to get up and leave the classroom, but Plaintiff remained seated and did not say anything. *Id.* At that time, Fields testified he decided to arrest Plaintiff for disturbing schools because she had disrupted the classroom for so long. ECF No. 42-4 at 10. Fields testified Plaintiff was only passively resisting by holding on to her desk, and was not a physical threat to any person or property. *Id.* at 12. He testified he needed to "subdue" Plaintiff to effect the arrest,[8] and asked the student sitting in front of Plaintiff to move out of his seat. *Id.* at 10, 12.

Fields then approached Plaintiff, still seated at her desk, grabbed her left arm and pulled her (and the desk) towards him. ECF No. 53-4 (cell phone videos 1 and 2). He then put his right arm under Plaintiff's chin, put his left hand under her left leg, and, standing behind Plaintiff,

---

[8] Fields testified he "had a history" with Plaintiff based on several previous fights with students, and he "knew she had a propensity for violence." ECF No. 42-4 at 43.

flipped her and the desk backwards. *Id.* As she was falling, Plaintiff's right hand struck Fields in the neck or head; however, it is unclear and disputed whether this was intentional or inadvertent. *Id.*; *but see* ECF No. 42-4 at 10, 39. Plaintiff landed on her back, still seated in her desk. ECF No. 53-4. Fields testified Plaintiff was resisting arrest by "fighting and flailing" at this point. ECF No. 42-4 at 41. Fields then grabbed her arm with his right hand and her left leg with his left hand and pulled her out of the desk and dragged or threw her to the front of the room.[9] ECF No. 53-4.

Fields testified Plaintiff continued to punch him in the chest at the front of the classroom, and he was only able to handcuff one of her hands until another deputy arrived and assisted in applying the handcuffs.[10] ECF No. 42-4 at 45-46. Plaintiff suffered a hairline fracture to her right wrist and carpet burn on her head. ECF No. 53-2 at 13, 19 (Plaintiff dep. at 75, 112). She required physical therapy for her injuries, and counseling in the aftermath. *Id.* at 15, 17-18.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection

---

[9] Fields denied throwing Plaintiff to the front of the room, but testified that when he grabbed her to pull her out of her desk, the force of their struggle propelled them to the front of the classroom. ECF No. 42-4 at 45-46.

[10] The other deputy took Plaintiff out of the classroom, and Fields arrested another student for cursing and yelling during Plaintiff's arrest. ECF No. 42-4 at 11.

is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**DISCUSSION**

1. *Defendant Fields' Motion*

    a. Conceded claims

Plaintiff has conceded she does not oppose summary judgment on the following issues: probable cause to arrest, qualified immunity as to an officer's decision to make an arrest, and her SCTCA claim against Fields in his individual capacity. ECF No. 53 at 6. Therefore, as recommended by the Magistrate Judge, summary judgment is granted as to these claims and they are dismissed with prejudice.

b. Excessive Force claim

Plaintiff alleges Defendant Fields used excessive force in effecting her arrest, in violation of the Fourth Amendment. Fields argues he is entitled to qualified immunity. The Magistrate Judge found Fields did not establish he is entitled to qualified immunity because a reasonable officer would understand the force used in this case – if Plaintiff's version of the facts is accepted by the jury – violated her Fourth Amendment rights. ECF No. 59 at 17.

Qualified immunity shields government officials from liability in a § 1983 lawsuit unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *E.W. by and through T.W. v. Dolgos*, 884 F.3d 172, 178 (4th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." *Id.*

In his objections, Fields argues the Report conflates the two prongs of this test, and concludes the "report never analyzes the facts and circumstances of a case to demonstrate that the state of the law in 2015 clearly indicates that Fields' conduct was objectionably unreasonable." ECF No. 60 at 3-4. Fields further argues the Report did not properly consider the "totality of the circumstances during the incident and measure the proportionality of the force in light of the circumstances," and that the cases cited in the Report are not specific enough to qualify as clearly established law governing Fields' conduct. *Id.* at 9-14.

7

In response, Plaintiff argues the Report's conclusion regarding qualified immunity is correct, as precedent with identical facts is not required to clearly establish a constitutional right, and the cases cited in the Report are analogous to the facts of this case. ECF No. 61 at 3-8.

### i. *Violation of Constitutional Right*

Because the Fourth Circuit has noted "it is often the better approach to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all," (*Dolgos*, 884 F.3d at 187), the court will consider whether Plaintiff's Fourth Amendment right to be free of excessive force was violated by Fields. The officer's actions are analyzed under an objective reasonableness standard. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). The Supreme Court has held proper application under this standard requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Also relevant here are the suspect's age and the school context. *Dolgos*, 884 F.3d at 179[11]; *see Kingley v. Hendrickson*, 576 U.S. __, 135 S. Ct. 2466, 2473 (2015) (considering other objective circumstances potentially relevant under reasonableness inquiry).

---

[11] Although *Dolgos* was published six months after the incident in this case, and therefore not instructive regarding clearly established law at the time the incident occurred, it provides a framework for analyzing Plaintiff's excessive force claim in a school setting.

Applying the *Graham* factors here, Fields used excessive force in performing a "take down maneuver" on Plaintiff. The severity of the "crime" at issue, if any, was minor - a misdemeanor allowing arrest for disrupting the classroom setting.[12] Plaintiff, sitting at her desk, did not pose a threat to Fields or anyone else in the room by refusing to leave the classroom, and did not have a weapon. Although Fields testified in his deposition he had knowledge of Plaintiff fighting and having a "propensity for violence," Fields acknowledged she was not actively posing a threat to any person or property before he attempted to arrest her. ECF No. 42-4 at 27 (Fields dep. at 126). Plaintiff was holding on to her desk as Fields tried to remove her; however, this "resistance" was passive and there is no indication she attempted to flee or evade arrest. Any physical resistance by Plaintiff, including potentially striking Fields in the face, occurred after he began his "takedown maneuver." ECF No. 53-4. All of these factors weigh in Plaintiff's favor.

Also relevant, and weighing in Plaintiff's favor, are the school setting and Plaintiff's age and mental capacity. As recognized by the Fourth Circuit, "officers should exercise more restraint when dealing with student misbehavior in the school context." *Dolgos*, 884 F.3d at 183 ("Society expects that children will make mistakes in school – and yes, even occasionally fight. That teachers handle student misbehavior and unruliness on a routine basis without the use of any force suggests that force is generally unnecessary in the school context."). While Plaintiff was a 16-year-old high school student, not a small-in-stature younger child, she was a minor student with

---

[12] The court notes South Carolina has since amended the disturbing schools statute to include only disturbances by nonstudents. *See* S.C. Code. § 16-17-420.

learning disabilities. Further, Plaintiff was injured by Fields' actions: she suffered a fractured wrist and carpet burns on her face. *See Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (stating the "extent of the plaintiff's injury is also a relevant consideration"). The Richland County Sherriff's Department's Policy and Procedure Guidelines on Use of Force described the maneuver executed as a "hard empty hand control – muscling technique" or "takedown," having a "probability of injury," and Plaintiff's expert noted the technique was at the "extreme high end" of the Sherriff's Department's use of force continuum. ECF Nos. 53-10 at 2, 53-14 at 5, 53-20 at 7. A Sheriff's Department memorandum analyzing Fields' use of force in this instance noted officers are trained to use less dangerous techniques before employing such a "takedown maneuver." ECF No. 53-5 at 1.

Analyzing the totality of the circumstances, the court finds a reasonable officer confronted with this situation would not have determined he needed to use the "takedown maneuver" on Plaintiff: the force used was disproportionate to the circumstances presented. Therefore, Fields' actions constitute excessive use of force and violated Plaintiff's Fourth Amendment rights.

### ii. Clearly Established Right

Having determined Fields' conduct violated Plaintiff's constitutional right to be free from the use of excessive force, the court must next examine whether Fields violated a clearly established right or whether he is entitled to qualified immunity. A defendant is shielded by qualified immunity when his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. __, 137 S. Ct. 548, 551 (2017). A right is clearly established when the "contours of the right are

sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Dolgos*, 884 F.3d at 185. The specific conduct at issue need not have been found by a court to violate a constitutional right; that is, a case directly on point is not required for a right to be clearly established. However, existing precedent must have placed the question beyond debate. *White*, 137 S. Ct. at 551; *Dolgos*, 884 F.3d at 185. While a general statement of law may provide notice, courts must not "define clearly established law at a high level of generality:" the clearly established law must be "particularized" to the facts of the case. *White*, 137 S. Ct. at 552.

The court finds Fourth Circuit precedent existing at the time of the incident gave fair warning that flipping over the desk of a seated, nonthreatening, and nonviolent special needs minor student, pulling her out of the desk, and slinging her across the floor to effect an arrest for a misdemeanor would constitute excessive force. Most significantly, in *Rowland v. Perry*, the Fourth Circuit determined an officer violated the plaintiff's constitutional rights when he used a "wrestling maneuver" on the plaintiff, throwing his weight into the plaintiff's leg and wrenching his knee until it gave way. 41 F.3d 167, 172 (1994). The plaintiff in *Rowland,* described by the court as "mildly retarded and possess[ing] a severe speech impediment," had committed at most a minor crime of picking up a fallen five-dollar bill from the ground and keeping it, instead of attempting to return it to the person who dropped it. *Id.* at 171. The officer then approached him, and a struggle began, terminating in the use of force against Rowland. Taking the facts in the light

most favorable to Rowland,[13] prior to the officer's approach, Rowland was not attempting to flee and the officer initiated the use of force by grabbing Rowland's collar and jerking him around. *Id.* at 171-72. Rowland "instinctively tried to free himself" and in response, the officer "punched him and threw him to the ground" before using a "wrestling maneuver" to injure Rowland's knee and end the struggle. *Id.* at 172. It was later determined Rowland suffered a torn anterior cruciate ligament ("ACL"). *Id.*

Similarly, in this case, Plaintiff had at most committed a minor offense of disturbing schools when Fields approached her and began his "takedown maneuver," like the "wrestling maneuver" in *Rowland*. Both actions by the officer in *Rowland* and by Fields utilized more force than necessary for such a minor infraction. Neither Rowland nor Plaintiff was attempting to flee the scene or avoid contact with the officer. Plaintiff may have struck Fields, but if she did it was only after he began using disproportionate force to remove her from her chair, just as Rowland "instinctively tried to free himself" from the officer's grasp. *See also Smith v. Ray,* 781 F.3d 95, 103 (4th Cir. 2015) ("Given the obvious excessiveness of the force [the officer] had employed up to that point, he cannot use her slight resistance to the attack to justify his escalation of the conflict."). Similar injuries occurred, showing the use of comparable force. Comparable to Rowland, who was described as "mildly retarded" with a "severe speech impediment," Plaintiff was a "special needs student" with learning disabilities.

---

[13] The parties in *Rowland* disputed the facts, but the defendant moved for summary judgment, and the facts were taken in the light most favorable to the plaintiff.

The court disagrees with Fields' assertion that "a reasonable officer in Deputy Fields' position would not know that using force to arrest for a minor crime was unconstitutional." ECF No. 60 at 7. *Rowland* alone clearly establishes that the amount and type of force used by the officer in that case and by Fields is unconstitutional when utilized in the circumstances presented here. Therefore, based on the totality of the circumstances, the court determines a reasonable officer in Fields' position would have been on notice that a "takedown maneuver" for a minor offense by a seated, nonthreatening, and nonviolent minor special needs student was excessive at the time of Fields' actions.[14]

The court acknowledges *Rowland* did not take place in a school setting, and therefore the facts are not exactly the same. However, the basic situation is analogous and "clearly established" the law against using full-body maneuvers in order to arrest a nonthreatening and nonviolent individual for a minor offense. This was sufficient to put a reasonable officer in Fields' position

---

[14] Fourth Circuit case law, at the time of the arrest by Fields, also included the following: *Smith*, 781 F.3d at 103 ("Our determination that the officer was not entitled to qualified immunity . . . was based on the simple fact that an officer took a situation where there was obviously no need for the use of any significant force and yet took an unreasonably aggressive tack that quickly escalated into a violent exchange when the suspect instinctively attempted to defend himself."); *Myers v. Baltimore County, Md.*, 713 F.3d 723, 735 (4th Cir. 2013) ("The use of any unnecessary, gratuitous, and disproportionate force . . . precludes an officer from receiving qualified immunity if the subject is unarmed and secured."); *Park v. Shiflett*, 250 F.3d at 852-53 (4th Cir. 2001) (concluding use of pepper spray to subdue an unarmed subject was excessive when the subject was not a threat to the officer or public, and denying qualified immunity).

on notice that use of such extreme force in such a situation would be considered excessive.[15] If anything, the school setting further exacerbates the use of the "takedown maneuver" without first employing less dangerous techniques.

For the reasons above, the court concludes Fields is not entitled to qualified immunity on Plaintiff's claim of excessive force. Accordingly, Fields' motion for summary judgment on the Fifth Cause of Action is denied.

2. *Defendant RCSD's Motion*

   a. Conceded claims

Plaintiff concedes certain state-law claims. She does not oppose dismissal of her claims for intentional infliction of emotional distress/outrage, false arrest/imprisonment, and negligence/gross negligence claims based on failure to enact or enforce polices. ECF No. 54 at 7. Therefore, as recommended by the Magistrate Judge, summary judgment is granted as to Plaintiff's Third and Fourth Causes of Action and they are dismissed with prejudice.

   b. Negligence/Gross Negligence based on Fields' Arrest of Plaintiff

The Report recommends denying summary judgment to the RCSD on Plaintiff's First Cause of Action based on Fields' actions in effecting Plaintiff's arrest. ECF No. 59 at 17-24. The RCSD objects to this conclusion, arguing discretionary immunity under the SCTCA applies to law

---

[15] A reasonable officer in Fields' position would also have been on notice that the RCSD's Policy and Procedure Guidelines on Use of Force described the maneuver as a "hard empty hand control – muscling technique" or "takedown," having a "probability of injury," and that officers were trained to use less dangerous techniques before employing such a maneuver.

enforcement officers, and use of force is "essentially a discretionary action." ECF No. 60 at 17-18. The RCSD also argues Fields had no duty to act absent a South Carolina statute, and his duty was to the public at large, not Plaintiff as an individual. *Id.* at 18-19. In addition, Defendant contends there are no "special circumstances" creating a common law duty in this case. *Id.* at 19-21. Finally, Defendant "object[s] to the omission of the disputed material facts on which the Report relies" to prevent a finding that Plaintiff's negligence exceeded Fields' alleged negligence. *Id.* at 22.[16]

Plaintiff argues the RCSD has not met the evidentiary burden necessary to apply the affirmative defense of discretionary immunity. ECF No. 61 at 10. She further argues the public duty rule does not apply, and Fields undertook a common law duty of due care in interacting with Plaintiff. *Id.* at 12. Finally, she contends the Report identified multiple material factual disputes making summary judgment inappropriate – facts regarding the amount of force, the amount of resistance, and the threat offered by Plaintiff. *Id.* at 14-15. Therefore, she asserts, summary judgment is inappropriate.

### i. Discretionary Function Immunity

The court agrees the RCSD has not met its burden of showing discretionary function immunity applies. Assuming *arguendo* this immunity can apply to a law enforcement officer,

---

[16] Defendants do not appear to object to the Report's recommendation regarding police protection immunity, and state they are not asserting an intentional conduct immunity. ECF No. 60 at 18. The court therefore reviews the Report for clear error and, finding none, adopts the Report on those issues.

15

there has been no showing that Fields made a choice to use the "takedown maneuver" after weighing different considerations, or used "accepted professional standards" when doing so. In fact, Sheriff Lott's assertions at the press conference, that Fields' use of force was contrary to his training and improper, are sufficient to create a disputed question of fact on whether Fields used accepted professional standards at all. Therefore, the RCSD is not entitled to summary judgment on the basis of discretionary function immunity.

### ii. Public Duty Rule

The Report recommended finding the public duty rule does not apply in this case. ECF No. 59 at 21-23. The RCSD, in its objections, argues "whether Plaintiff alleges that Fields' conduct violated a statute does not determine the application of the public duty rule." ECF No. 60 at 18. Because Fields was acting within the course of his employment as a deputy sheriff, the RCSD asserts, his conduct "arose entirely under his statutory duty" and those duties "are to the people of South Carolina." *Id.* at 19.

South Carolina courts have determined the public duty rule only comes into play when, "and only when, the plaintiff relies upon a statute as creating the duty." *Arthurs ex rel. Estate of Munn v. Aiken County*, 551 S.E.2d 579, 582 (S.C. 2001). As our court has held, because Plaintiff "does not assert negligence based on breach of a statutory duty, [the defendant's] argument based on the public duty rule is inapposite to her negligence claim." *Newkirk v. Enzor*, 240 F. Supp. 3d 426, 437 (D.S.C. 2017).

The South Carolina Supreme Court has held a plaintiff suing a sheriff's department may rely on a duty "created by statute or one founded on the common law." *Arthurs*, 551 S.E.2d at

582. The *Arthurs* court determined the plaintiff in that case relied on both statutory and common law grounds to create a duty, and only the statutory grounds would be analyzed under the public duty rule. *Id.* at 583. If the "duty relied upon is based upon the common law, . . . then the existence of that duty is analyzed as it would be were the defendant a private entity." *Id.* Therefore, based on *Arthurs*, the court finds Plaintiff's reliance on a common law duty in her negligence claim means the public duty rule does not apply here.

### iii. Common law Duty of Care

The RCSD also contends no "special circumstances" give rise to a common law duty of care to Plaintiff. ECF No. 60 at 20. It argues *Newkirk*, cited by the Report, is distinguishable because the officer in that case initiated the interaction, while Fields was called by an administrator and thus had a duty to the public to address Plaintiff's refusal to comply with instructions. *Id.*

Even assuming *arguendo* Fields did not initiate the contact with Plaintiff, this does not relieve him of his duty to act reasonably in his interactions with her. "One who assumes to act, even though under no obligation to do so, may become subject to the duty to act with due care." *Crowley v. Spivey*, 329 S.E. 2d 774, 780 (1985). Therefore, once Fields "decided to enter the classroom and remove Plaintiff" (ECF No. 42-2 at 10, Fields dep. at 11), he had a common law duty to use reasonable care in doing so. *Newkirk*, 240 F. Supp. 3d at 438 ("Specifically, [the officer] owed [the plaintiff] the duty to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation.").

17

### iv. *Comparative Negligence*

Summary judgment "is generally not appropriate in a comparative negligence case," unless "the sole reasonable inference which may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent." *Bloom v. Ravoira*, 529 S.E.2d 710, 713 (S.C. 2000).

The RCSD argues Plaintiff's violation of the disturbing schools statute constitutes negligence *per se*, and therefore summary judgment is appropriate on comparative negligence. ECF No. 45-1 at 15-16. The Report could not find as a matter of law whether Plaintiff was negligent *per se*, or whether her alleged fault in causing her injuries exceeded that of Fields. ECF No. 59 at 25. Defendant asserts an objection to the "omission of the disputed material facts on which the Report relies" regarding comparative negligence. ECF No. 60 at 22.

Violation of a statute in South Carolina does not necessarily constitute negligence *per se*. *See, e.g., Trivelas v. South Carolina Dept. of Transp.*, 558 S.E.2d 271, 275 (S.C. Ct. App. 2001) ("[O]ur caselaw has recognized that a violation of a traffic statute does not constitute negligence *per se* under explanatory or excusatory circumstances."). No case has been cited holding a violation of the disturbing schools statute, which has been amended since this incident, is negligence *per se* on the part of a student. In addition, a finding of negligence *per se* would not support summary judgment in and of itself. *See Whitlaw v. Kroger Co.*, 410 S.E.2d 251, 252-53 (S.C. 1991) ("The finding of a statutory violation, however, does not end the inquiry. The causation of the inquiry must also be evaluated."). In this case, there may be no proximate cause, as it was not likely foreseeable to Plaintiff that her refusal to leave her classroom would result in

her being flipped backwards out of her desk and thrown across the room, injuring her arm. "Violation of the statute, thus, is not conclusive of liability." *Id.* at 253.

For the reasons above, summary judgment is not appropriate on Plaintiff's First Cause of Action for negligence and gross negligence against the RCSD related to the manner of her arrest by Fields.

## CONCLUSION

After reviewing the record of this matter, the applicable law, and the Report and Recommendation of the Magistrate Judge, the court agrees with the Report. Accordingly, the court adopts and incorporates the Report and Recommendation by reference in this Order, as supplemented above. Defendants Richland County and Sheriff Lott are dismissed from this action. Defendants Fields' and the RCSD's motions for summary judgment (ECF Nos. 42, 45) are granted as to the Third and Fourth Causes of Action, which are dismissed with prejudice,[17] but denied as to Plaintiff's First Cause of Action against the RCSD for negligence and gross negligence as to the manner of Plaintiff's arrest by Fields and the Fifth Cause of Action against Fields for excessive force under 42 U.S.C. § 1983. Pursuant to the Stipulation of Dismissal filed June 13, 2019 (ECF No. 56), all claims against Richland School District Two, Robert Long, and KaRon Webb were dismissed with prejudice. Accordingly, this matter shall proceed to trial on Plaintiff's First Cause

---

[17] The abandoned claims are: against Fields, probable cause to arrest, qualified immunity as to an officer's decision to make an arrest, and the SCTCA claim against Fields in his individual capacity; against the RCSD, intentional infliction of emotional distress/outrage, false arrest/imprisonment, and negligence/gross negligence claims based on failure to enact or enforce polices.

19

of Action against the RCSD for negligence/gross negligence by Fields in the manner of his arrest of Plaintiff and Plaintiff's Fifth Cause of Action against Fields for use of excessive force in violation of § 1983, all other claims and Defendants having been dismissed.

Jury Selection is scheduled for January 23, 2020.

**IT IS SO ORDERED.**

<u>s/Cameron McGowan Currie</u><br>
CAMERON MCGOWAN CURRIE<br>
Senior United States District Judge

Columbia, South Carolina
October 23, 2019